# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONTEREY RESEARCH, LLC, | Civil Action No. 20-0158-NIQA-LAS |
| Plaintiff, | |
| vs. | |
| MARVELL TECHNOLOGY GROUP LTD., MARVELL INTERNATIONAL LTD., MARVELL ASIA PTE LTD., and MARVELL SEMICONDUCTOR, INC. | |
| Defendants. | |

## PLAINTIFF MONTEREY RESEARCH, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Dated: June 4, 2020

OF COUNSEL:

Jonas R. McDavit (*pro hac vice*)
Jordan N. Malz (*pro hac vice*)
Edward Geist (*pro hac vice*)
Michael Wueste (*pro hac vice*)
Ryan G. Thorne (*pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401

Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300 (Telephone)
(302) 777-0301 (Facsimile)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff Monterey Research, LLC*

# TABLE OF CONTENTS

Pages

I.    INTRODUCTION ........................................................................................1

II.    NATURE AND STAGE OF THE PROCEEDINGS ..........................................2

III.    SUMMARY OF ARGUMENTS...................................................................3

IV.    STATEMENT OF FACTS .........................................................................3

    A.    The Five Related Actions Proceeding Before This Court Involve Common Patents And Common Questions Of Law And Fact. ................................................3

    B.    Marvell Semiconductor Is A United States Company That Sells The Accused Products In This District And Does Not Contest Personal Jurisdiction....................................................................4

    C.    Marvell Technology Group, The Global Head Of Marvell, Participates In The Design, Development, And Sale Of Accused Products Sold In This District...................................................................5

    D.    Marvell International And Marvell Asia Work "Through" And "For" Semiconductor "And Participate In Infringing Activities In This District. ............7

    E.    The Marvell Defendants Have Close Relationships With No Less Than 12 Delaware Affiliates. ............................................................8

V.    LEGAL STANDARD................................................................................9

    A.    Venue ..........................................................................9

    B.    Personal Jurisdiction ..........................................................10

    C.    Transfer ......................................................................11

VI.    ARGUMENT ........................................................................................12

    A.    The Court Should Not Dismiss This Action Against Marvell Semiconductor Based On Marvell's Conclusory, One-Sided, Untested Venue Allegations....................................................................12

        1.    This District Is An Appropriate Venue For This Action Against Marvell Semiconductor At Least Based On Its Close Interrelationships With Many Delaware Affiliates....................................12

        2.    The Court Should At Least Allow Venue Discovery. ...............................14

**TABLE OF CONTENTS (cont'd)**

**Pages**

B.    The Court Has Personal Jurisdiction Over Marvell Technology, Marvell International, and Marvell Asia. ...................................................................15

     1.    Personal Jurisdiction Exists Under The Delaware Long-Arm Statute. ...........................................................................................15

     2.    Personal Jurisdiction Exists Under The Federal Long-Arm Statute..........17

C.    The Court Should Not Transfer This Case. ...........................................................18

VII.    CONCLUSION...................................................................................................20

## **TABLE OF AUTHORITIES**

**Pages**

**Cases**

*bioMérieux, S.A. v. Hologic, Inc.*,
   No. 12-21-LPS, 2018 WL 4647483 (D. Del. Sep. 26, 2018)......................................... 11, 18

*Blackbird Tech LLC v. E.L.F. Beauty, Inc.*,
   No. 19-1150-CFC, 2020 WL 2113528 (D. Del. May 4, 2020) ........................................ 12

*Boston Scientific Corp. v. Micro-Tech Endoscopy USA Inc.*,
   No. 18-1869-CFC-CJB, 2020 WL 229993 (D. Del. Jan. 15, 2020) ........................... 11, 17

*Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*,
   No. 17-379-LPS, 2017 WL 3980155 (D. Del. Sept. 11, 2017) ........................... 10, 13, 14

*Cellectis S.A. v. Precision Biosciences, Inc.*,
   858 F. Supp. 2d 376 (D. Del. 2012).................................................................................. 19

*CNH Am. LLC v. Kinzenbaw*,
   No. 08-945-GMS, 2009 WL 3737653 (D. Del. Nov. 9, 2009)......................................... 19

*Elm 3DS Innovations LLC v. SK Hynix Inc.*,
   No. 14-1432-LPS-CJB, 2015 WL 4967139 (D. Del. Aug. 20, 2015) ............................. 20

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017)........................................................................................ 10

*In re Volkswagen of Am., Inc.*,
   566 F.3d 1349 (Fed. Cir. 2009)........................................................................................ 20

*Intel Corp. v. Broadcom Corp.*,
   167 F. Supp. 2d 692 (D. Del. 2001).................................................................................. 19

*Intellectual Ventures I LLC v. Altera Corp.*,
   842 F. Supp. 2d 744 (D. Del. 2012).................................................................................. 19

*Intellectual Ventures I LLC v. Ricoh Co., Ltd.*,
   67 F. Supp. 3d 656 (D. Del. 2014).................................................................................... 16

*Javelin Pharm., Inc. v. Mylan Labs. Ltd.*,
   No. 16-224-LPS, 2017 WL 5953296 (D. Del. Dec. 1, 2017) ........................ 10, 12, 13, 14

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995)............................................................................................... 11

## TABLE OF AUTHORITIES (cont'd)

**Pages**

*Mallinckrodt IP v. B. Braun Med. Inc.*,
No. 17-365-LPS, 2017 WL 6383610 (D. Del. Dec. 14, 2017) ...................... 10, 12, 13, 14

*Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*,
960 F. 2d 1217 (3d Cir. 1992)........................................................................... 11

*Miller Yacht Sales, Inc. v. Smith*,
384 F.3d 93 (3d Cir. 2004)................................................................................ 10

*Minnesota Mining & Mfg. Co. v. Eco Chem., Inc.*,
757 F.2d 1256 (Fed. Cir. 1985)................................................................... 10, 12

*Robert Bosch LLC v. Alberee Prods., Inc.*,
70 F. Supp. 3d 665 (D. Del. 2014)................................................................... 18

*Rocke v. Pebble Beach Co.*,
541 Fed.Appx. 208 (3d Cir. 2013)............................................................... 10, 14

*Schubert v. OSRAM AG*,
No. 12-cv-923-GMS, 2013 WL 587890 (D. Del. Feb. 14, 2013)..................... 11

*Shutte v. Armco Steel Corp*,
431 F.2d 22 (3d Cir. 1970)......................................................................... 11, 18

*Smart Audio Techs., LLC v. Apple, Inc.*,
910 F. Supp. 2d 718 (D. Del. 2012).................................................................. 19

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017)...................................................................................... 10

*TriDiNetworks Ltd. v. Signify North America Corporation*,
No. 19-1063-CFC-CJB, 2020 WL 2839224 (D. Del. June 1, 2020) ................ 18

*TSMC Tech., Inc. v. Zond, LLC*,
No. 14-721-LPS-CJB, 2015 WL 328334 (D. Del. Jan. 26, 2015).................... 12

*UCB, Inc. v. Mylan Techs., Inc.*,
No. 17-322-LPS, 2017 WL 5985559 (D. Del. Dec. 1, 2017) ......................... 10, 12, 13, 14

*Varian Med. Sys., Inc. v. Elekta AB*,
No. 15-871-LPS-CJB, 2016 WL 3341865 (D. Del. June 8, 2016)................... 11

## Statutes

28 U.S.C. § 1400(b) .............................................................................................. 10

35 U.S.C. § 271(a) ................................................................................................ 20

iv

## TABLE OF AUTHORITIES (cont'd)

**Pages**

**Rules**

D. Del. L.R. 7.1.3(c)(2).............................................................................................................. vol. 18

Federal Rule of Civil Procedure Rule 4(k)(2)...........................................................................2, 3

## I.     INTRODUCTION

Monterey Research, LLC ("Monterey")—a Delaware company—commenced five related actions in the District of Delaware, including this one, to redress widespread patent infringement by numerous companies.  Due to their related status, all five actions stand before this Court.

This action concerns the infringement of Marvell, one of the largest semiconductor conglomerates in the world.  The four Marvell defendants are Marvell Semiconductor, Inc. ("Marvell Semiconductor"); Marvell Technology Group Ltd. ("Marvell Technology Group"); Marvell Asia PTE Ltd. ("Marvell Asia"); and Marvell International Ltd. ("Marvell International") (collectively, "Marvell").  Monterey asserted five patents against Marvell and also asserted those same patents against other defendants in related actions before this Court.[1]  As a result, this action overlaps the other related actions and involves many common issues of law and fact.  This Court will have to resolve those common issues regardless of the outcome of Marvell's motion.

Although Monterey filed this action against Marvell in January 2020, Marvell never indicated a desire to seek dismissal based on venue or personal jurisdiction until after the reassignment of this case from Judge Connolly to this Court.  Marvell has since taken extreme measures to evade this District and Court, even belatedly filing a duplicative declaratory judgment action against Monterey in another district with respect to the same patents at issue here.  Should the Court determine that this action against Marvell may remain in this District, the five related cases will continue to move forward here in an efficient, coordinated manner.  Dismissal or transfer would result in duplicative litigations, waste judicial resources, and invite inconsistent outcomes.

No basis exists for Marvell's attempt to escape from this forum.  Marvell improperly seeks to resolve disputes at the pleading stage in Marvell's favor, and requests dismissal without

---

[1] The four related actions are Case Nos. 19-2083 (NIQA) ("Qualcomm Action"); 19-2090 (NIQA) ("Nanya Action"); 19-2149 (NIQA) ("AMD Action"); and 20-0089 (NIQA) ("ST Action").

providing any discovery for testing its conclusory allegations.  Even Marvell's own regulatory filings contradict its allegations.  The Court should reject Marvell's corporate shell game.

*First*, this District provides a proper venue for this action against Marvell Semiconductor.  Marvell Semiconductor is Marvell's main U.S. operating company, makes infringing sales in this District, and does not dispute that this District has personal jurisdiction.  Marvell Semiconductor also has close relationships with upwards of 12 Delaware affiliates that are incorporated and reside in Delaware, including its parent company and another entity with a suspiciously similar name: "Marvell Semiconductor, Ltd."  In view of these Delaware affiliates and operations, the Court should at least permit venue discovery to test Marvell's conclusory, one-sided venue allegations.

*Second*, this district similarly has personal jurisdiction over Marvell Technology Group, Marvell Asia, and Marvell International.  Those entities have sufficient contacts with Delaware by participating in and controlling the activities that infringe in this District.  They also have sufficient contacts with the United States as a whole under Federal Rule of Civil Procedure 4(k)(2).

*Third*, Marvell fails to meet its burden of establishing that the Court should transfer this case.  Marvell provides no basis for venue transfer at all.  Indeed, this district provides the most appropriate venue for furthering judicial economy in view of the other related actions here.  In short, this action can and should proceed here, in a coordinated manner, with the related actions.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On January 31, 2020, Monterey filed its complaint against Marvell Semiconductor, Marvell Technology Group, Marvell Asia, and Marvell International alleging infringement of five patents: United States Patent Nos. 6,459,625 ("the '625 patent"); 6,534,805 ("the '805 patent"); 6,629,226 ("the '226 patent"); 6,651,134 ("the '134 patent"); and 6,765,407 ("the '407 patent") (collectively, "the Patents-in-Suit"). (D.I. 1.)  This action, along with four other related actions, were designated as related and originally assigned to Judge Connolly. (D.I. 1-6.)

On March 5, 2020, the Third Circuit Court of Appeals reassigned all five related actions to this Court. (D.I. 16.)  On May 19, 2020, the parties in all five actions submitted a joint proposed scheduling order. (D.I. 24.)  But on May 21, 2020, Marvell filed this motion to dismiss. (D.I. 26.)

## III.   SUMMARY OF ARGUMENTS

1.     The Court should not dismiss Marvell Semiconductor based solely on its one-sided, untested venue allegations.  Marvell Semiconductor does not dispute that this district has personal jurisdiction.  Venue is also proper in this District at least based on Marvell Semiconductor's close relationship with its 12 Delaware affiliates that are incorporated in and reside in Delaware, including its parent company and others.  Any disputes regarding Marvell Semiconductor's interrelationships with its Delaware affiliates at least warrant targeted venue-related discovery.

2.     The Court has personal jurisdiction over Marvell Technology Group, Marvell International, and Marvell Asia.  These defendants participate in, direct, and control the activities that infringe in this District.  They also satisfy Federal Rule of Civil Procedure 4(k)(2) because they have sufficient contacts with the United States as a whole as to comport with due process.

3.     The Court should not transfer this action.  Monterey has a rational and legitimate reason for filing all related actions here.  Maintaining this action here along with the other related actions will allow the judicial system to adjudicate common issues once in an efficient and consistent manner, facilitating judicial economy.  Transferring this action while the other related actions remain here would waste judicial resources and result in inefficient duplicative litigations.

## IV.   STATEMENT OF FACTS

### A.   The Five Related Actions Proceeding Before This Court Involve Common Patents And Common Questions Of Law And Fact.

Monterey commenced five related patent infringement actions in this District to redress the patent infringement of numerous companies in the United States, including in Delaware.  On

November 1, 2019, Monterey filed suit against Qualcomm. (No. 19-2083 (NIQA).)  On November 4, 2019, Monterey filed suit against Nanya Technologies. (No. 19-2090 (NIQA).)  On November 15, 2019, Monterey filed suit against Advanced Micro Devices. (No. 19-2149 (NIQA).)  On January 21, 2020, Monterey filed suit against STMicroelectronics. (No. 20-0089 (NIQA).)  And on January 31, 2020, Monterey filed this suit against Marvell. (D.I. 1.)

The five related actions include significant overlap of patents.  Monterey has asserted that Marvell infringes five U.S. Patents: Nos. 6,459,625; 6,534,805; 6,629,226; 6,651,134; and 6,765,407. (D.I. 1.)  Monterey has asserted all of these five patents against multiple defendants.

| Patent No. | Marvell | AMD | Nanya | Qualcomm | ST |
|------------|---------|-----|-------|----------|-----|
| 6,459,625  | X       |     |       | X        | X  |
| 6,534,805  | X       | X   |       | X        | X  |
| 6,629,226  | X       | X   |       |          |    |
| 6,651,134  | X       | X   | X     | X        | X  |
| 6,765,407  | X       | X   |       | X        |    |

(No. 19-2149 (NIQA), D.I. 1; No. 19-2090 (NIQA), D.I. 1; No. 19-2083 (NIQA), D.I. 1; No. 20-0089 (NIQA), D.I. 1.)  These related actions raise common issues of law concerning the proper interpretation of the patents (i.e., claim construction) and likely common issues of fact concerning patent validity and infringement.  Due to common issues, Monterey designated these cases as related, all were assigned to Judge Connolly, and then all were reassigned to this Court. (D.I. 16.)

On May 14, 2020, just before filing this motion, Marvell Semiconductor filed a duplicative declaratory judgment action against Monterey in the Northern District of California as to these same patents.  (*Marvell Semiconductor, Inc. v. Monterey Research, LLC*, No. 5:20-cv-03296.)

### B.    Marvell Semiconductor Is A United States Company That Sells The Accused Products In This District And Does Not Contest Personal Jurisdiction.

Marvell Semiconductor is Marvell's "U.S. operating subsidiary" and "a leading supplier of infrastructure semiconductor solutions." (D.I. 27, Ex. B at ¶ 6; D.I. 28 at ¶ 7; Ex. A at 2.)

Marvell Semiconductor admits that it "is responsible for the U.S. activities related to any Marvell products, including importing, marketing, pricing, distributing, and selling any Marvell products in the United States." (D.I. 28 at ¶ 7.)  Marvell Semiconductor admits that it "also performs the U.S. based research and development associated with Marvell products." (*Id*.)   Marvell Semiconductor is a subsidiary of Marvell Technology, Inc.—a Delaware entity (as discussed below)—and an indirect subsidiary of defendant Marvell Technology Group. (D.I. 29 at ¶1.)[2]

In addition, Marvell Semiconductor is the entity that "controls and operates the www.marvell.com website." (D.I. 28 at ¶ 7.)   Among other things, www.marvell.com lists Marvell's product offerings, including the accused products themselves. (*See, e.g.*, Ex. B & C.)

Monterey's complaint pleaded allegations with respect to Marvell Semiconductor's infringing activities in Delaware. (D.I. 1 at ¶ 13.)  Marvell Semiconductor has admitted in other cases in this District that "it conducts and has conducted business ***in this District***...," "is presently a patent defendant ***in this forum***," and "would not object to appearing ***in this forum*** to defend its products from the allegations raised in this case." (Ex. D at 1-2; Ex. E at 6.)  Marvell does not dispute that this District and Court have personal jurisdiction over Marvell Semiconductor.

### C.   Marvell Technology Group, The Global Head Of Marvell, Participates In The Design, Development, And Sale Of Accused Products Sold In This District.

Marvell Technology Group "is a global fabless semiconductor solutions provider," the global head of the Marvell conglomerate, and Marvell Semiconductor's ultimate parent. (Ex. A at 2; D.I. 29 at ¶ 2.)  Marvell Technology Group is publicly traded on the U.S.-based NASDAQ stock market under the symbol "MRVL" and files required reports with the U.S. Securities and Exchange Commission ("SEC") under U.S. law. (Ex. A at 1.)

---

[2] All exhibits cited in this brief are exhibits to the declaration of Michael Wueste.  Unless otherwise indicated, all emphasis is added.

In its SEC filings, Marvell Technology Group reports that it, together with its consolidated subsidiaries, "operate in one reportable segment: the ***design***, ***development*** and ***sale*** of integrated circuits." (Ex. A at 5, 93; *see also id.* at 2 (defining "Marvell," the Company," and "we" as "Marvell Technology Group Ltd., together with its consolidated subsidiaries").)  It further states:

- "Our research and development efforts are directed largely to the development of high performance analog, mixed-signal, digital signal processing and embedded microprocessor integrated circuits with the smallest die size and lowest power." (*Id.* at 5.)

- "One of our primary focuses is on winning competitive bid selection processes, known as 'design wins,' to develop products for use in our customers' products." (*Id.* at 17.)

- "The Company's core strength is the development of complex System-on-a-Chip devices..." (*Id.* at 55.)

- "The Company also develops platforms that it defines as integrated hardware along with software that incorporates digital computing technologies designed and configured to provide an optimized computing solution." (*Id.*)

Pertinent here, Marvell Technology Group with its subsidiaries designs, develops, and markets ***the accused products***, and works with Marvell Semiconductor in importing and selling those products in the United States, including in Delaware. (*Id.* at 5-6; *see* D.I. 1, ¶ 11, 25-26.) Marvell Technology Group boasts a broad offering of Ethernet solutions, processors, custom ASICs, storage controllers, and fibre channels—categories that include the accused products:

- "We offer a broad portfolio of Ethernet solutions spanning controllers, network adapters, physical transceivers and switches." (Ex. A at 3);

- "We offer highly integrated semiconductors that provide single or multiple core processors ..." (*Id.*);

- "Our controllers integrate several key Marvell technologies spanning computer, networking, security and storage." (*Id.*);

- "Like our HDD controllers, our SSD controllers support all the high-volume SSD host system interfaces, including SAS, SATA, peripheral component interconnect express ("PCIe"), non-volatile memory express ("NVMe") and NVMe over Fabrics ("NVMe-oF"). (*Id.*)

6

Marvell Technology Group not only has Delaware subsidiaries, but also directs, controls, and participates in their U.S. operations.  Marvell Technology Group publicly portrays itself and its subsidiaries as one company—"Marvell"—and provides financial reporting for itself and its subsidiaries on a consolidated basis. (*Id.* at 5, 46-94)  It also promotes itself as a single "Marvell" entity on its website, https://www.marvell.com/, and in investor presentations. (Ex. F at 10.)

Finally, Marvell Technology Group conducts substantial business in the United States.  In its SEC filing, Marvell Technology Group reports that it has locations in the United States whose "primary use" are for "[r]esearch and design, sales and marketing, administration and operations":

| Locations | Primary Use |
|---|---|
| United States | Research and design, sales and marketing, administration and operations |

(Ex. A at 30.)  Marvell Technology Group has 983,000 square feet of owned facilities and 530,000 square feet of leased facilities in the United States.  (*Id.*)  It also has "distributors who support our sales and marketing activities in the United States…" as well as "third-party foundries located in… the United States." (*Id.* at 5, 18). Marvell reported over $258,000,000 of revenue from shipments to the United States and over $265,000,000 of property and equipment located here. (*Id.* at 72, 93.) Among "[t]he Company's major tax jurisdictions are the United States..." (*Id.* at 91.)

### D.     Marvell International And Marvell Asia Work "Through" And "For" Semiconductor "And Participate In Infringing Activities In This District.

Marvell International is a wholly-owned subsidiary of Marvell Technology Group. (D.I. 29 at ¶ 3.)  Marvell International is active in the U.S., as evidenced by its patent infringement action against Realtek Semiconductor Corp. in the U.S. International Trade Commission. (Ex. G.) Marvell International represented that it "conducts significant domestic industry activities ***in the United States***," including "significant investment in plant and equipment" and "significant employment of labor and capital" (*Id*. at ¶¶ 9.2; 9.6-9.11.)  It also represented that U.S. defendant Marvell Semiconductor "develops products on behalf of" Marvell International. (*Id.* at ¶¶ 2.2.)

7

Indeed, Marvell International has represented that it works "*through*" U.S. subsidiary Marvell Semiconductor and has relied on Marvell Semiconductor's U.S. activities for jurisdiction:

- "*MIL [Marvell International], through MSI [Marvell Semiconductor]* has made and continues to make significant investment in plant and equipment in the United States related to research and development of products…" (*Id*. at ¶ 9.6.)

- "*MIL [Marvell International], through MSI [Marvell Semiconductor]*, has employed and continues to employ significant capital in U.S. facilities for research and development relating to its physical layer products…" (*Id*. at ¶ 9.9.)

- "*MIL [Marvell International], through MSI [Marvell Semiconductor]*, has employed and continues to employ a significant number of employees in U.S. facilities that devote substantial man-hours toward research and development relating to its physical layer products…" (*Id*. at ¶ 9.10.)

Marvell Asia is an indirect subsidiary of defendant Marvell Technology Group. (D.I. 29 at ¶ 4.) The Declaration of Rita Patel states that Marvell Asia develops, manufactures, and sells products outside the United States. (D.I. 28 at ¶ 14.) But the declaration *also* suggests that Marvell Asia *ships products to the United States*, including to U.S. defendant Marvell Semiconductor. (*Id*. (referencing "*products MAPL [Marvell Asia] ships to MSI [Marvell Semiconductor]*").) Marvell Semiconductor has represented in other cases that it "markets these products in the United States *for Marvell Asia*" and that "[t]he products manufactured by MAPL [Marvel Asia] overseas *for distribution in the United States* are then *sold to MSI* [Marvel Semiconductor]." (Ex. G at ¶ 2.2.)

### E.     The Marvell Defendants Have Close Relationships With No Less Than 12 Delaware Affiliates.

Marvell is a global conglomerate that has over 60 affiliates, many of which are incorporated and residing in Delaware. (Ex. A at Exhibit 21.1.) In its recent SEC filing, Marvell reports that it has at least *12 Delaware affiliates*: (1) Cavium India Holdings, LLC; (2) Cavium Networks International, Inc.; (3) Cavium Networks LLC; (4) Cavium LLC; (5) Marvell Semiconductor, Ltd.; (6) Marvell Technology, Inc.; (7) NetXen, Inc.; (8) QLogic International Holdings, Inc.; (9) QLogic LLC; (10) Aquantia Corp.; (11) Aquantia LLC; and (12) Avera Semiconductor LLC:

**SUBSIDIARIES OF MARVELL**

| Subsidiary | | | | Jurisdiction |
|---|---|---|---|---|
| Cavium India Holdings, LLC | | | | Delaware, United States |
| | * | * | * | |
| Cavium Networks International, Inc. | | | | Delaware, United States |
| Cavium Networks LLC | | | | Delaware, United States |
| | * | * | * | |
| Cavium, LLC | | | | Delaware, United States |
| | * | * | * | |
| Marvell Semiconductor, Ltd. | | | | Delaware, United States |
| | * | * | * | |
| Marvell Technology, Inc. | | | | Delaware, United States |
| | * | * | * | |
| NetXen, Inc. | | | | Delaware, United States |
| | * | * | * | |
| QLogic International Holdings, Inc. | | | | Delaware, United States |
| | * | * | * | |
| QLogic LLC | | | | Delaware, United States |
| | * | * | * | |
| Aquantia Corp. | | | | Delaware, United States |
| Aquantia LLC | | | | Delaware, United States |
| | * | * | * | |
| Avera Semiconductor LLC [Marvell Government Solutions, LLC][2] | | | | Delaware, United States |

(*Id.* (excerpts from Marvell's 10K filing).)  The official website of Delaware's Department of State Division of Corporations similarly confirms that these 12 Marvell affiliates are Delaware corporations and have a registered agent located at 1209 Orange Street, Wilmington, Delaware 19801. (Exs. H-S.)

The Marvell defendants appear to have a particularly close relationship with Delaware affiliates Marvell Technology, Inc. and Marvell Semiconductor, Ltd. (D.I. 29 at ¶ 1; *see also* Ex. T.)  Delaware affiliate Marvell Semiconductor Ltd. is a wholly-owned subsidiary of Marvell Technology Group Ltd. (Ex. U.)  And the name of Delaware affiliate "Marvell Semiconductor, Ltd." is strikingly similar to defendant "Marvell Semiconductor, Inc."

## V.     LEGAL STANDARD

### A.     Venue

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and

established place of business." 28 U.S.C. § 1400(b).  For venue based on residence, a domestic corporation "resides" in its state of incorporation.  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017).  For venue based on a place of business, "three general requirements [are] relevant to the inquiry: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

"[V]enue in a patent infringement case [may be] proper with regard to one corporation by virtue of the acts of another, intimately connected, corporation." *Minnesota Mining & Mfg. Co. v. Eco Chem., Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985); *see also Javelin Pharm., Inc. v. Mylan Labs. Ltd.*, No. 16-224-LPS, 2017 WL 5953296, at *3 (D. Del. Dec. 1, 2017).  "The 'place' of a corporate affiliate or subsidiary of a named defendant may…be treated as a 'place of the defendant.'" *Javelin Pharm.*, 2017 WL 5953296, at *4; *UCB, Inc. v. Mylan Techs., Inc.*, No. 17-322-LPS, 2017 WL 5985559, at *4 (D. Del. Dec. 1, 2017); *Mallinckrodt IP v. B. Braun Med. Inc.*, No. 17-365-LPS, 2017 WL 6383610, at *4 (D. Del. Dec. 14, 2017).  "[U]nless a plaintiff's claim is 'clearly frivolous,' jurisdictional discovery should be allowed." *Rocke v. Pebble Beach Co.*, 541 Fed.Appx. 208, 212 (3d Cir. 2013); *accord Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*, No. 17-379-LPS, 2017 WL 3980155, at *21 (D. Del. Sept. 11, 2017).  Courts in this District deny motions to dismiss for improper venue and order venue-related discovery where the existing record is insufficient.  *UCB*, 2017 WL 5985559 at *3, *5; *Javelin Pharm.*, 2017 WL 5953296 at *3-*4; *Mallinckrodt IP*, 2017 WL 6383610 at *7; *Bristol-Myers Squibb*, 2017 WL 3980155 at *22.

### B.  Personal Jurisdiction

At the pleading stage, "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  The court undertakes a two-part analysis to determine whether it may exercise personal

jurisdiction over a party: (1) whether the long arm statute permits the exercise of jurisdiction and (2) whether the exercise of jurisdiction comports with due process. *Enzo Life Sci., Inc. v. Hologic Inc.*, No. 16-894-LPS-CJB, 2018 WL 4660355, at *1 (D. Del. Sept. 26, 2018). "If no evidentiary hearing has been held, a plaintiff 'need only establish a prima facie case of personal jurisdiction.'" *Id.* A plaintiff "presents a prima facie case . . . by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F. 2d 1217, 1223 (3d Cir. 1992).

Courts in this District regularly exercise personal jurisdiction over foreign defendants. *See, e.g.*, *Enzo Life Sci., Inc.*, 2018 WL 4660355, at *3; *bioMérieux, S.A. v. Hologic, Inc.*, No. 12-21-LPS, 2018 WL 4647483, at *2 (D. Del. Sep. 26, 2018); *Boston Scientific Corp. v. Micro-Tech Endoscopy USA Inc.*, No. 18-1869-CFC-CJB, 2020 WL 229993, at *8 (D. Del. Jan. 15, 2020).

## C.    Transfer

A plaintiff's choice of forum "should not be lightly disturbed." *Shutte v. Armco Steel Corp*, 431 F.2d 22, 25 (3d Cir. 1970). As a result, transfer "is not to be liberally granted." *Id.* The burden of demonstrating that transfer is warranted rests squarely on the party seeking to disturb the plaintiff's choice of forum, and "[t]hat burden is a heavy one." *Varian Med. Sys., Inc. v. Elekta AB*, No. 15-871-LPS-CJB, 2016 WL 3341865, at *2 (D. Del. June 8, 2016). "[U]nless the balance of convenience of the parties is ***strongly in favor*** of [the] defendant, the Plaintiff's choice of forum should prevail." *Id.* (emphasis in original). The plaintiff's choice of forum is a "paramount consideration" in any transfer analysis, and "is entitled to at least some degree of heightened deference, so long as 'rational and legitimate' reasons underlie the selection." *Schubert v. OSRAM AG*, No. 12-cv-923-GMS, 2013 WL 587890, at *4 (D. Del. Feb. 14, 2013)

In considering transfer of venue, the Third Circuit evaluates non-exclusive private interest and public interest factors. *Jumara v. State Farm Ins. Co*., 55 F.3d 873, 879 (3d Cir. 1995). When

evaluating the public interest factor of "practical considerations that could make the trial easy, expeditious, or inexpensive," courts consider whether other pending cases in the District involve the same patents, thus resulting in "efficiencies… gained by having these various litigation matters in one Court." *Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-902-LPS-CJB, 2012 WL 4889438 at *12 (D. Del. Oct. 15, 2012). Courts in this District routinely deny motions to transfer venue. *See, e.g.*, *Pragmatus AV*, 2013 WL 174499 at *1; *TSMC Tech., Inc. v. Zond, LLC*, No. 14-721-LPS-CJB, 2015 WL 328334, at *1 (D. Del. Jan. 26, 2015); *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, No. 19-1150-CFC, 2020 WL 2113528, at *5 (D. Del. May 4, 2020).

## VI.   ARGUMENT

### A.   The Court Should Not Dismiss This Action Against Marvell Semiconductor Based On Marvell's Conclusory, One-Sided, Untested Venue Allegations.

Marvell does not dispute that this District and Court have personal jurisdiction over defendant Marvell Semiconductor. (D.I. 1 at ¶ 13.) Unable to evade this Court on grounds of personal jurisdiction, Marvell instead asks the Court to take the extreme measure of dismissing Marvell Semiconductor *at the pleading stage* based solely on Marvell's conclusory, one-sided, untested venue allegations. The Court should decline to do so.

#### 1.   This District Is An Appropriate Venue For This Action Against Marvell Semiconductor At Least Based On Its Close Interrelationships With Many Delaware Affiliates.

"[V]enue in a patent infringement case [may be] proper with regard to one corporation by virtue of the acts of another, intimately connected, corporation." *Minn. Mining & Mfg.*, 757 F.2d at 1265. "[T]he 'place' of a corporate affiliate or subsidiary of a named defendant may…be treated as a place of the defendant." *Javelin Pharm.*, 2017 WL 5953296 at *4; *UCB*, 2017 WL 5985559 at *4.

Here, Monterey has provided many facts showing that venue here is proper, including based on Marvell Semiconductor's strong interrelationships with its numerous Delaware affiliates.

*See Bristol-Myers Squibb*, 2017 WL 3980155, at \*3 ("[I]t is not necessary for the plaintiff to include allegations in his complaint showing that venue is proper…when confronted with a motion to dismiss for improper venue, the Court may consider both the complaint and evidence outside the complaint.")  Marvell Semiconductor has at least 12 Delaware affiliates that are incorporated, reside, and may also have places of business in Delaware. (Ex. A at Exhibit 21.1; Ex. H-S.)  These Delaware affiliates appear to have close relationships with Marvell Semiconductor.  Delaware affiliate, Marvell Technology, Inc., is Marvell Semiconductor's parent. (D.I. 29 at ¶ 1.)  Delaware affiliate, Marvell Semiconductor, Ltd., has a suspiciously similar name as Marvell Semiconductor.

Marvell's opening brief and declaration fail to address, let alone rebut, these facts.  Courts rely on these types of facts in denying motion to dismiss for venue at the pleading stage.  For example, in *Javelin Pharm.*, the Court denied a motion to dismiss for improper venue filed by non-Delaware defendants because of their Delaware subsidiaries.  *Javelin Pharm.*, 2017 WL 5953296, at \*2-\*3.  Like here, the moving defendants declared that they did not maintain any "real property in Delaware," did not have "a mailing address or telephone listing in Delaware," "have any employees" in Delaware, or "advertise or represent that they have any place of business in Delaware."  *Id.* at \*3.  But two defendants were "wholly-owned subsidiaries" of the third defendant, which in turn had "at least 20 subsidiaries incorporated in the State of Delaware."  *Id.* at \*3.  The Court found that "the places of any [corporate] affiliates, subsidiaries, parents, or alter egos may be attributable to the named [] Defendants for purposes of venue."  *Id.* at \*3.  *See also Bristol-Myers Squibb*, 2017 WL 3980155, at \*19 (denying motion to dismiss in part because the defendant "is part of a corporate family that includes approximately 40 Delaware entities (among them corporations that, under *TC Heartland*, 'reside' in Delaware for patent venue purposes).");  *UCB*, 2017 WL 5985559, at \*3, \*5; *Mallinckrodt IP*, 2017 WL 6383610, at \*3.

13

## 2. The Court Should At Least Allow Venue Discovery.

If inclined to consider Marvell's factual allegations at the pleading stage, the Court should at least permit Monterey to obtain targeted venue discovery to investigate Marvell Semiconductor's interrelationships with its Delaware Affiliates and test the representations in Marvell's declaration. Courts permit venue-related discovery "unless a plaintiff's claim is 'clearly frivolous." *Rocke*, 541 Fed. Appx. at 212; *accord Bristol-Myers Squibb*, 2017 WL 3980155, at *21.

Marvell's opening brief does not even mention "discovery," let alone attempt to show that Monterey's assertion of venue is "clearly frivolous." Nor can it. Courts in this District have held as a matter of law that the theory asserted by Monterey here "that the 'place' of any [corporate] entity, including [corporate] affiliates, subsidiaries, parents, or alter egos, may be attributable to the named [] Defendants for purposes of venue—is ***not*** frivolous and ***justifies*** some limited venue-related discovery." *UCB*, 2017 WL 5985559 at *3; *Javelin Pharm.*, 2017 WL 5953296 at *3-4; *Mallinckrodt IP*, 2017 WL 6383610 at *3-4. "Among the pertinent circumstances to be considered is whether the formalities of corporate separateness are preserved." *Javelin Pharm.*, 2017 WL 5953296, at *4. Marvell's brief and declaration contradict Marvell's SEC disclosures, fail to address Marvell's Delaware affiliates, and raise more questions than answers.

Courts allow venue discovery to proceed where the requested discovery relates to the interrelationship and intermingling of corporate affiliates, as it does here. *Bristol-Myers Squibb*, 2017 WL 3980155 at *21; *UCB*, 2017 WL 5985559 at *3, *5; *Javelin Pharm.*, 2017 WL 5953296 at *3-*4; *Mallinckrodt IP*, 2017 WL 6383610, at *7. In that vein, Monterey has recently served discovery requests designed to develop a full factual record concerning the interrelationship between the Marvell defendants, the Delaware Affiliates, and their operations and locations in Delaware. (Ex. V, RFP Nos. 83-96; Ex. W, Interrogatory No. 1.) The Court should allow that discovery to proceed to round out the conclusory, one-sided allegations presented by Marvell in the Patel declaration.

14

**B.      The Court Has Personal Jurisdiction Over Marvell Technology, Marvell International, and Marvell Asia.**

**1.      Personal Jurisdiction Exists Under The Delaware Long-Arm Statute.**

Marvell does not dispute that this District has personal jurisdiction over Marvell Semiconductor.  This district likewise has personal jurisdiction over Marvell Technology, Marvell International, and Marvell Asia.  These defendants have sufficient contacts with Delaware and the exercise of personal jurisdiction would not offend notions of fair play and substantial justice.

Although Marvell has not yet responded to Monterey's discovery requests, publicly-available evidence suggests that these defendants are responsible for introducing the accused and other products into the United States, including Delaware.  For example, as discussed above, Marvell International previously represented in its patent case at the United States International Trade Commission that U.S. defendant Marvell Semiconductor "develops products ***on behalf of***" Marvell International. (Ex. G at ¶¶ 2.2.)   Marvell International also represented that it "conducts significant domestic industry activities ***in the United States***," including "significant investment in plant and equipment" and "significant employment of labor and capital." (*Id*. at ¶¶ 9.2.)  Marvell International even represented that it performed these United States activities "***through***" Marvell Semiconductor. (*Id*. at ¶¶ 9.6-9.11.)  Marvell's conclusory allegation that it has no contacts with the United States contradicts its repeated representations of significant United States activities that it made to avail itself of the jurisdiction of the United States International Trade Commission.

Similarly, as discussed above, the evidence suggests that Marvell Asia ***ships products to the United States***, including to U.S. defendant Marvell Semiconductor.  For example, the Patel declaration expressly references "***products MAPL [Marvell Asia] ships to MSI [Marvell Semiconductor]***" as well as other interactions with Marvell Semiconductor, including transfer of title. (D.I. 28 at ¶ 14.)   Marvell's brief does not deny that "any Marvell-branded products

manufactured or supplied by MAPL [Marvell Asia] are distributed to the United States" and, indeed, suggests that they are. (D.I. 27 at 7.)  In its patent case at the United States International Trade Commission, Marvell similarly represented that Marvell Semiconductor "markets these products in the United States *for Marvell Asia*" and that "[t]he products manufactured by MAPL [Marvell Asia] overseas *for distribution in the United States are then sold to MSI* [Marvel Semiconductor]." (Ex. G at ¶ 2.2.)  Again, Marvell's conclusory allegation that Marvell Asia has not directed or otherwise introduced products here does not comport with its prior representations.[3]

Marvell Technology Group likewise conducts substantial business in the United States.  In its SEC filing, Marvell Technology Group reports that it has locations in the United States whose "primary use" are for "[r]esearch and design, sales and marketing, administration and operations." (Ex. A at 30.)  Marvell Technology Group reports having 983,000 square feet of owned facilities and 530,000 square feet of leased facilities in the United States. (*Id.*)  Marvell Technology Group "ha[s] distributors who support our sales and marketing activities in the United States…" as well as "third-party foundries located in… the United States." (*Id*. at 5, 18)  For the last corporate year, Marvell reported over $258,000,000 of revenue from shipments to the United States and over $265,000,000 of property and equipment located in the United States (*Id.* at 72, 93.)  Marvell Technology Group even reported that among "[t]he Company's major tax jurisdictions are the United States." (*Id.* at 91.)  Marvell Technology Group should not be permitted to play a corporate shell game to avoid accountability for the U.S. activities that are the subject of its SEC disclosures.

Monterey also included numerous Delaware-based allegations in its complaint:

- The defendants have "committed…contributed to, and/or participated in the commission of acts of infringement giving rise to this action within the State of

---

[3] In *Intellectual Ventures I LLC v. Ricoh Co., Ltd.*, 67 F. Supp. 3d 656 (D. Del. 2014), there was no evidence that a foreign affiliate intended to sell products in this District.  By contrast, Marvell Semiconductor "markets these products in the United States *for Marvell Asia*."  (Ex. G at ¶ 2.2.)

Delaware."

- Their acts of infringement include "directly and/or indirectly making, using, selling, offering for sale, importing products, and/or practicing methods that practice one or more claims of the Patents-in-Suit."

- They are "global operating company[ies] that ha[ve] transacted and conducted business in the State of Delaware and with Delaware residents with respect to the products and instrumentalities that practice one or more claims of the Patents-in-Suit."

- They "directly and/or through intermediaries, uses, sells, ships, distributes, imports into, offers for sale, and/or advertises or otherwise promotes their products throughout the United States, including in the District of Delaware. *See, e.g.,* https://www.marvell.com/."

- They sell their "products online, including through sales on Arrow and other online platforms. *See, e.g.,* https://www.arrow.com/en/products/mrvl8040-16-220-08/solidrun-ltd."

(D.I. 1, ¶¶ 12, 14-15.) Taken as true, as required on a motion to dismiss, Monterey's allegations justify the Court's exercise of personal jurisdiction.

Finally, personal jurisdiction here would not offend notions of fair play and substantial justice. Plaintiff Monterey is a Delaware company. (D.I. 1.) Marvell Technology Group, Marvell International Asia, and Marvell International stand accused of infringing activities ***in this District***. Delaware has a strong interest in protecting Delaware companies from infringement in Delaware.

### 2.  Personal Jurisdiction Exists Under The Federal Long-Arm Statute.

An additional basis for personal jurisdiction exists under Federal Rule of Civil Procedure 4(k)(2), which permits a district court to "exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Boston Sci. Corp*, 2020 WL 229993, at *4. Under that rule, "personal jurisdiction over a foreign defendant exists when: (1) the case arises under federal law and is not pending before the court pursuant to the court's diversity jurisdiction; (2) the foreign defendant lacks sufficient contacts with any single state to subject it to personal jurisdiction in any state; and (3) the foreign defendant has sufficient

contacts with the United States as a whole to comport with constitutional notions of due process." *Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 680 (D. Del. 2014).

Marvell Technology Group, Marvell International Asia, and Marvell International meet all three requirements. First, Monterey's patent infringement action arises under federal law. Second, despite challenging jurisdiction here, Marvell's misguided declaratory judgment action conspicuously failed to name Marvell Technology Group, Marvell International Asia, and Marvell International as plaintiffs—suggesting that they should not face suit there. *See, e.g., bioMérieux*, 2018 WL 4647483, at *6 ("[Defendant] has not met its burden of identifying an alternative forum where Plaintiffs could have brought this suit"). Third, as discussed above, Marvell Technology Group, Marvell International Asia, and Marvell International have ample contacts with the United States as a whole to comport with due process, having purposely directed their activities here.

At a minimum, the Court should permit jurisdictional discovery as discussed above.

### C. The Court Should Not Transfer This Case.

Marvell bears the heavy burden of establishing entitlement to venue transfer. *TSMC Tech*, 2014 WL 7251188 at *6. Marvell fails to meet its burden. Marvell's request for venue transfer assumes that this District does not provide a proper venue in the first place. (D.I. 27.) If the Court determines that this District provides a proper venue, Marvell has proffered no basis for transfer at all. Marvell also fails to analyze the majority of the *Jumara* factors, which not only weigh against transfer, but demonstrate that this District provides the ***most appropriate*** forum for this action.[4]

"[A] plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request…." *Shutte*, 431 F.2d at 25. The Court "should not simply consider the *fact* of

---

[4] By failing to analyze these factors in its opening brief, Marvell has waived arguments on them. D. Del. L.R. 7.1.3(c)(2); *see also TriDiNetworks Ltd. v. Signify North America Corporation*, No. 19-1063-CFC-CJB, 2020 WL 2839224, at *4 (D. Del. June 1, 2020).

that choice, but the *reasons* behind that choice." *Pragmatus AV*, 2012 WL 4889438, at *4. "If those reasons are 'rational and legitimate' then they will 'weigh[ ] against transfer.'" *Id*.

Here, Monterey chose to bring this action against Marvell in this District to facilitate an efficient, coordinated resolution of five related actions that involve overlapping patents and common issues of law and fact. Monterey is not "forum shopping," but rather has a rational and legitimate reason for filing suit here. Marvell's choice of forum "is not given the same weight as Plaintiff's preference." *Intellectual Ventures I LLC v. Altera Corp*., 842 F. Supp. 2d 744, 755 (D. Del. 2012). Marvell's preference "is not sufficient to displace the plaintiff's own choice of venue." *CNH Am. LLC v. Kinzenbaw*, No. 08-945-GMS, 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009).

Further, this action is a patent infringement action, which arises "wherever someone has committed acts of infringement." *Cellectis S.A. v. Precision Biosciences, Inc*., 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a))). Where, as here, the defendant "operates on a national or global level," where the claim arose is a "typically neutral" factor. *Smart Audio Techs., LLC v. Apple, Inc*., 910 F. Supp. 2d 718, 730 (D. Del. 2012). Marvell also has made no showing on convenience of the parties or witnesses. Indeed, Marvell "is a multi-billion dollar company that does business on an international scale" and, therefore, cannot "establish that litigating this case in Delaware will pose a unique or unusual burden on [its] business operations." *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 706 (D. Del. 2001).

Important public interest factors include "practical considerations that could make the trial easy, expeditious, or inexpensive." *Pragmatus AV*, 2012 WL 4889438 at *12; *TSMC Tech*., 2014 WL 7251188, at *20. Courts look to whether other pending cases in the District involve the same patents, thus resulting in "efficiencies… gained by having these various litigation matters in one Court." *Pragmatus AV*, 2012 WL 4889438 at *12; *accord TSMC Tech*., 2014 WL 7251188, at

19

*20.  The judicial system would bear great costs "adjudicating [] very similar cases involving the same [] patents in two different venues."  *Elm 3DS Innovations LLC v. SK Hynix Inc.*, No. 14-1432-LPS-CJB, 2015 WL 4967139, at *11 (D. Del. Aug. 20, 2015).  "[M]ultiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).

Here, the judicial system will realize substantial efficiencies from the five related patent actions continuing to proceed here.  Due to the overlapping patents, the related actions raise common issues of law (e.g., claim construction) and fact (e.g., patent validity and infringement).  Maintaining the Marvell action here along with the four other related actions will allow the judicial system to adjudicate these common issues once in an efficient and consistent manner.  Transferring the Marvell action to another district while the other four related actions remain here, however, would result in inefficient duplicative litigations concerning the same patents and guarantee that different courts adjudicate the same common issues.  As such, transfer would waste judicial resources and invite inconsistent judicial outcomes.  *Elm 3DS Innovations*, 2015 WL 4967139 at *12 ("[A] most important factor is the avoidance of duplicative litigation: [a]djudicating almost identical issues in separate fora would waste judicial resources.")  Accordingly, significant public and private *Jumara* factors weigh heavily against transfer, and thus, Marvell cannot meet its burden of establishing entitlement to transfer.[5]

## VII.   CONCLUSION

For the foregoing reasons, the Court should deny Marvell's motion and allow this action to move forward on the merits along with the other related actions pending here.  In the alternative, the Court should grant Monterey's request for targeted venue and jurisdictional discovery.

---

[5] Indeed, Marvell International has previously represented that "litigating in Delaware is equally convenient for Marvell as litigating in California. (Ex. X at 9.)

Dated: June 4, 2020                         Respectfully submitted,

                                            FARNAN LLP

                                            */s/ Brian E. Farnan*
                                            Brian E. Farnan (#4089)
                                            Michael J. Farnan (#5165)
                                            919 North Market Street
                                            12th Floor
                                            Wilmington, DE 19801
                                            (302) 777-0300 (Telephone)
                                            (302) 777-0301 (Facsimile)
                                            bfarnan@farnanlaw.com
                                            mfarnan@farnanlaw.com

                                            Jonas R. McDavit (*pro hac vice*)
                                            Jordan N. Malz (*pro hac vice*)
                                            Edward Geist (*pro hac vice*)
                                            Michael Wueste (*pro hac vice*)
                                            Ryan G. Thorne (*pro hac vice*)
                                            DESMARAIS LLP
                                            230 Park Avenue
                                            New York, NY 10169
                                            Telephone: 212-351-3400
                                            Facsimile: 212-351-3401

                                            *Attorneys for Plaintiff Monterey Research,
                                            LLC*

21